No. 33,690

ROBERT BUCHHEIN, *Appellant,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee.*

(75 P. 2d 280)

Opinion filed January 29, 1938.

*John J. Riling* and *Edward T. Riling,* both of Lawrence, for the appellant.

*Bruce Hurd, C. J. Putt, Robert M. Clark,* all of Topeka, and *Raymond F. Rice,* of Lawrence, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action for damages for injuries sustained by the plaintiff when the automobile in which he was riding was struck by defendant's train at a township road crossing. Plaintiff appeals from the order sustaining a demurrer to his evidence.

The essential facts as disclosed by plaintiff's own testimony were: Plaintiff's friend, Orville Loftin, owned and operated a 1926 or 1927 model Whippet coupé in which they were returning to Lawrence after having finished a day's work on the Mitchell farm located about eight miles northwest of the city of Lawrence; it was about five o'clock in the afternoon when they left the farm, which was approximately one mile from the crossing; the train came from the west and plaintiff and his friend approached the crossing from the north; plaintiff was seated on the right or west side of the car; there was no glass in either the east or west car window; the parties were familiar with the railroad crossing, as they had crossed it the previous day; plaintiff was familiar with the train schedules on the day of the accident; it had rained somewhat and the road was slightly slippery; there were no chains on the tires; they traveled from the Mitchell farm to the crossing at the rate of about twenty miles per hour until they reached a point about twenty or twenty-five feet north of the track; the accident occurred on the 15th day of August, 1934, and there was a field of growing corn west of the highway which obscured plaintiff's vision to the west until they reached the point twenty or twenty-five feet north of the track; at that point plaintiff looked west and could see about 800 feet along the track, but he saw nothing; the driver shifted into second gear when they were

about fifteen to twenty feet north of the north rail; he could then have seen 1,000 feet up the track; there was a big warning sign, "Look Out for the Cars," on the north side of the track; plaintiff, however, knew the track was there without the warning sign and knew that a scheduled train was due there at about that time; on their approach to the crossing the parties had been discussing the question of whether the train had passed; he knew it was up to him to look for a train approaching from his side; he had nothing to do except watch for the train; when they shifted gears they did not come to a stop, but slowed down to probably six or eight miles an hour; perhaps they did not slow down to more than ten miles per hour; after they shifted gears they could see 1,000 to 1,200 feet up the track; there was then no train in sight; there were some small ruts just north of the crossing and they had some trouble getting up, but the car did not stop at any time; after they shifted gears the car naturally picked right up; the engine was not killed and the car did not stall on the track; plaintiff did not look west from the time they shifted gears until they were on about the middle of the track; they heard no bell or signal; the wheels spun a little in the ruts; he looked to the west when they were about half way across the tracks; the train was then between two and four hundred feet west of them; it was coming at a terrific rate of speed; the front wheels of the car were then over the south rail of the track; he glanced back and noticed that his friend saw where the train was and kicked the motor wide open; the back wheels of the car passed over the south rail and the train struck the rear spring of the car, which extended back of the car; just after the back wheels of the car went over the south rail, the wheels spun; when they were struck the car was traveling about ten or twelve miles an hour; he was twenty-seven years of age and he thought his vision was good.

C. A. Buchhein, plaintiff's father, a witness called by plaintiff, testified to the effect that at a distance of twenty feet north of the track you could see the track for a distance of probably 1,200 feet.

Plaintiff contends the trial court erred in sustaining the demurrer. He urges defendant could have averted the collision. In other words, he rests his case on the doctrine of last clear chance. That doctrine, however, can have no application where the contributory negligence of the plaintiff is not shown to have ceased. See *Bazzell v. Atchison, T. & S. F. Rly. Co.*, 133 Kan. 483, 300 Pac. 1108, and numerous cases therein cited.

In ruling on the demurrer the trial court was, of course, obliged to view plaintiff's evidence in the light most favorable to him. (*Hill v. Southern Kansas Stage Lines Co.*, 143 Kan. 44, 53 P. 2d 923.)

Notwithstanding the fact plaintiff was not driving the car, but was merely riding therein, he was nevertheless under a duty to exercise reasonable care and precaution for his own protection. He cannot recover damages when he failed to look for an approaching train, which he could have plainly seen had he looked, and failed to warn the driver of the approaching train. (*Kirby v. Railway Co.*, 106 Kan. 163, 186 Pac. 744; *Knight v. Railway Co.*, 111 Kan. 308, 206 Pac. 893; *Hooker v. Missouri Pac. Rld. Co.*, 134 Kan. 762, 8 P. 2d 394.)

The fact is inescapable, in the instant case, that if plaintiff had looked to the west between the time they shifted the gears and before they reached the track, he would have seen the approaching train. Nothing obscured his vision. He could then have seen the train for a distance of not less than 1,000 to 1,200 feet. There was nothing to have prevented him from warning the driver of the imminent danger. According to his own evidence only one answer is possible. It is that he did not look and hence, of course, did not see the train nor warn the driver of the impending danger. If the car in which he was riding, after they had shifted gears, and after the car had picked up speed, was only traveling at the rate of ten miles per hour, the car would have traveled 29.4 feet in two seconds. Viewing the evidence in its most favorable aspect to plaintiff, we will say he could have seen only 1,000 feet to the west. In order for the train not to have been in plain view, it would have been necessary for the train to have been traveling faster than 500 feet per second. At 500 feet per second, the train would have traveled 340.90 miles per hour. Obviously the train was in plain view. If the train was traveling 70 miles per hour, it would have traveled 102.62 feet per second. At such speed it follows that two seconds before the collision occurred the train was only about 205.24 feet west of the crossing. The train was therefore not only in plain view, but dangerously near. Plaintiff is presumed to have seen what he could have seen had he looked. His contributory negligence in failing to look and in failing to warn the driver was established by his own evidence, as a matter of law, and his action must fail. (*Young v. Railway Co.*, 57 Kan. 144, 45 Pac. 583; *Railroad Co. v.*

*Holland,* 60 Kan. 209, 56 Pac. 6; *Crane v. Railway Co.,* 89 Kan. 472, 131 Pac. 1188; *Gaffney v. Railway Co.,* 107 Kan. 486, 192 Pac. 736; *Pagan v. Lowden,* 145 Kan. 513, 518, 66 P. 2d 567.)

Plaintiff's evidence was that the train was coming with terrific speed. A person who attempts to negotiate a railroad crossing directly in front of a rapidly moving train, of which approach he is or should be aware, is guilty of contributory negligence which bars his recovery. (*Railway Co. v. Schriver,* 80 Kan. 540, 103 Pac. 994; *Jacob v. Railway Co.,* 97 Kan. 247, 154 Pac. 1023.)

In the instant case plaintiff's negligence, in failing to look and warn, did not only exist prior to entering upon the crossing but continued until the entire car was upon the crossing. He did not look until practically the last moment. In *Gilbert v. Railway Co.,* 91 Kan. 711, 139 Pac. 380, it was said:

"The plaintiff was engaged in an active disregard of his own safety up to the last moment when he might have been saved, and consequently has no standing to invoke the doctrine of last clear chance." (p. 718.)

Moreover, if the trial court had assumed that plaintiff's contributory negligence had ceased, which the trial court was unable to do in view of plaintiff's own testimony, the fact still remains that plaintiff's evidence did not bring him under the doctrine of last clear chance. His own testimony clearly showed the car was never entrapped or in a predicament from which it could not extricate itself. The motor had not stopped, the car was not stalled, but on the contrary, notwithstanding the fact it had been raining, and the road was slightly slippery, the car picked up speed after they shifted gears. Under the evidence the doctrine of last clear chance was not applicable. (*Tarter v. Missouri-K.-T. Rld. Co.,* 119 Kan. 365, 367, 239 Pac. 754; *Jamison v. Atchison, T. & S. F. Rly. Co.,* 122 Kan. 305, 308, 252 Pac. 472; *Bazzell v. Atchison, T. & S. F. Rly. Co.,* supra.)

We have carefully examined the authorities cited by plaintiff on the doctrine of last clear chance. They are not applicable. They contain elements of entrapment, where the negligence of plaintiff had ceased.

The judgment is affirmed.